IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SUMMER SOWASH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 7:19cv00361 |
| ) | |
| MARSHALLS OF MA, INC. d/b/a Marshalls, ) | |
| **Serve: C T CORPORATION SYSTEM** ) | |
|     **4701 Cox Road, Suite 285** ) | |
|     **Glen Allen, VA 23060** ) | |
|     **(Henrico County)** ) | |
| ) | |
| and ) | |
| ) | |
| DAVID HUGHES, ) | |
| **Serve: Marshalls** ) | |
|     **1421 Towne Square Blvd.** ) | |
|     **Roanoke, VA 24012** ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Summer Sowash, by counsel, moves for judgment against defendants Marshalls of MA, Inc., d/b/a Marshalls ("Marshalls") and David Hughes, jointly and severally, and as grounds therefore states as follows:

### STATEMENT OF THE CASE, JURISDICTION AND VENUE

(1) This is an action for declaratory, injunctive relief and monetary damages, and to address deprivation of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, *et seq.* (hereinafter, "Title VII"), and the common law of the Commonwealth of Virginia.

1

(2) The Court has jurisdiction over the federal claim pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1343(a)(4) and supplemental jurisdiction over the state common law claim pursuant to 28 U.S.C. § 1367.

(3) The claims asserted in this action arose within the western district of Virginia in that the alleged discrimination occurred in the western district of Virginia. Venue of this action is thus proper pursuant to 42 U.S.C. §§2000e, *et seq*.

(4) Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission and the Virginia Council on Human Rights; received a notice of right to sue dated February 13, 2019; and commences this action within 90 days of receipt thereof.

(5) Marshalls is a corporation organized pursuant to the laws of the state of Massachusetts. According to www.tjx.com (visited May 9, 2019) Marshalls was acquired by TJX in 1995, and together with T.J. Maxx, forms Marmaxx, the largest off-price retailer of apparel and home fashions in the United States. Marshalls has stores around the United States, Puerto Rico and the District of Columbia, including the store where plaintiff works at Towne Square in Roanoke, Virginia.

(6) Defendant Marshalls is and was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(a). At all times material hereto Marshalls was an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(b), that is, at all times material hereto Marshalls was a person engaged in an industry affecting commerce which had 15 or more employees for each working day in each of twenty or more calendar weeks during the years of plaintiff's employment or the preceding calendar year.

(7) At all times material hereto, Marshalls employed more than 500 persons.

(8)     At all times material hereto, defendant Hughes acted in his capacity as an employee of defendant Marshalls within the actual or apparent scope of his authority or in his capacity as an individual, or both.

(9)     Plaintiff at all times material hereto is and was a resident of the Commonwealth of Virginia and is and was an "employee" of defendant Marshalls (plaintiff is not certain of the precise legal name of her employer).

## STATEMENT OF FACTS

(10)    Plaintiff began working for Marshalls in June in 2010 (all dates are approximate).

(11)    While working for Marshalls plaintiff was sexually harassed and assaulted and battered by her assistant store manager, David Hughes.

(12)    By way of background, the problems began in February 2018.  A then new assistant store manager, Hughes, called plaintiff into the office and started ranting about a female employee, Kristy, and asked plaintiff what Kristy had said about him.  Hughes told plaintiff to cut the shit right there, and that plaintiff did not need to be mixed up with Kristy (this did not make any sense, and plaintiff did not know what Hughes was talking about).  Hughes abruptly stood up and stood right in front of plaintiff and told her that if he found out the plaintiff was lying to him (she was not) then they were about to have some bigger problems.  Plaintiff was upset by Hughes' behavior, which was extremely odd and inappropriate, and reported it to her store manager, Clayton Richmond.  The store manager told her to write a statement.  She did so and also emailed human resources about the problem.  Plaintiff also asked Richmond not to schedule plaintiff to work with Hughes or to be alone with him in the future.  The store manager told plaintiff's assistant manager, Lynn, that was just too bad, and that plaintiff would have to work with Hughes.  That is when things got worse.

(13) While at work, Hughes began to place his body close to plaintiff's person and to touch plaintiff in an inappropriate and offensive manner. For example, Hughes hugged plaintiff, touched and rubbed her arms, and hovered over the top of her to the point that she had difficulty concentrating on her work.

(14) Plaintiff went to her Store Manager, Clayton Richmond, and asked him to tell Hughes to stop touching her. Clayton said that he would take care of it. But, Hughes continued to touch and hug plaintiff and rub her body, all against her will and in an inappropriate and offensive manner.

(15) A few months passed. Nothing changed. Plaintiff had surgery on April 19, 2018 and returned to work on April 24th but did not see Hughes until April 26th. When Hughes saw plaintiff, he put his arm around her in the breakroom, pulled her close to him, and kissed her on the cheek, all against her will and in an inappropriate and offensive manner. He also told her that he was happy to have her back at work. Plaintiff was disgusted and in disbelief, and immediately told her assistant manager, Jasen Smith.

(16) After a while, on or about May 30, 2018, a lady from Marshalls in Atlanta, Erica (lnu), came to the Roanoke store. Plaintiff told Erica about the inappropriate touching and that Hughes had kissed her. Erica told plaintiff that she would take care of it.

(17) Evidently the word of plaintiff's complaint quickly got back to Hughes, because shortly after speaking with Erica, Hughes approached plaintiff and told her that if she had a problem with him, then she should tell him so. After a couple of weeks passed, the touching and hugging continued. At some point, the store manager, Clayton Richmond, asked plaintiff whether Hughes had kissed her, and she told him that he had. The store manager asked plaintiff to write another statement. She did as instructed. Plaintiff also told Clayton that Hughes was

still touching her, and that she did not understand why he had not stopped. At some point, plaintiff also talked to another human resources person, Joe Taylor, and explained the situation to him.

(18)    Meanwhile, Hughes began to slander plaintiff's name around the store and suggested that plaintiff was having a relationship with Clayton Richmond (this was not true). When plaintiff told Clayton about this, Clayton told plaintiff to email Joe Taylor, so she did as instructed.

(19)    Plaintiff heard from Joe Taylor on June 20, 2018. Instead of asking about Hughes' sexual harassment of plaintiff, Taylor turned it around and asked plaintiff if *she* had ever had sex with Clayton because there were rumors going around the store about *them*. This was a form of victim blaming. Plaintiff felt so sick and embarrassed that she did not want to go to work and believed that Hughes was spreading the false rumors about her. Plaintiff had difficulty focusing on her job and dreaded going to work, especially when she knew that she would have to continue working with Hughes as instructed by Marshalls store manager.

(20)    Then, on or about August 22, 2018, plaintiff was called to the office for a meeting with her managers Clayton Richmond, Lynn Tyrrell, and Jasen Smith and notified that she was being transferred from the Ladies Department where plaintiff normally worked to the Homes Department. Plaintiff had no issues working in the Ladies Department, and her managers had previously been made aware that she could not work in the Homes Department due to a medical issue with her back. When plaintiff was told she was being transferred, she reminded Jasen Smith of the issue with her back. But, Marshalls transferred her anyway. Plaintiff believes that the transfer was done in retaliation for complaining about the sex harassment and hostile work environment and to discourage plaintiff to the point she would quit her job. But, she did not.

(21)     Plaintiff began to work in the Home Department on or about September 5, 2018. After a week or two of working in that department, plaintiff started having pain in her back and had to seek medical care. As a result, plaintiff's doctor ordered physical therapy.

(22)     During the first week in December 2018, the store manager called plaintiff to the office and said, "so I heard you're having back problems," and said that "HR wanted me to give you these papers" to fill out. Plaintiff had not had to fill out the papers before, so she called human resources. HR told her that they never said that she had to fill out papers, and that the only person they had talked to was the plaintiff. Plaintiff nevertheless completed the paperwork as instructed and was approved for intermittent FMLA leave on December 14, 2018.

(23)     Plaintiff continued to work with Hughes as instructed by Marshalls, and Hughes continued to make remarks about plaintiff's appearance and to harass her.

(24)     For example, on January 2, 2019, as plaintiff was finishing up a 15 minute work break, she heard someone typing the code to get into the break room. When the door opened, Hughes stood in front of plaintiff, blocking her path. Plaintiff tried to leave, but Hughes instructed plaintiff to close the break room door. Plaintiff was afraid to be alone with Hughes, but when she held the door open, Hughes stated, "uh uh, close the door," or similar words, and demanded that she close the door so that he could tell plaintiff something about Clayton, the store manager.

(25)     Then on January 11, 2019, plaintiff worked 8:00 a.m. to 5:00 p.m. and Hughes was closing (1:00 p.m. to 10:00 p.m.). Plaintiff accidentally left her work keys sitting next to the computer when she clocked out. The next day when she was getting out of the car to go to work, she realized that the keys were not in her pocket. That morning when she entered the store, she looked for her keys by the computer, then went home to look in the pocket of the coat she had

worn the previous day as well as in her home and car. When she returned to work, several people helped her look for the keys. The assistant manager told her that Hughes had picked up the keys and put them in his pocket. Plaintiff then found her keys on Hughes' desk among his personal belongings. Hughes was off that weekend and never left a note or otherwise informed plaintiff that he had her keys. The assistant manager told plaintiff that Hughes was trying to get her into trouble, and plaintiff agreed.

## COUNT I: TITLE VII CLAIM FOR SEX DISCRIMINATION AND HARASSMENT

(26)     Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(27)     At all times material hereto, defendant Marshalls had a duty to maintain a work environment free of sex discrimination and harassment.

(28)     Defendant Marshalls' action and inaction created a hostile an offensive work environment and interfered with plaintiff's work.

(29)     Defendant Marshalls knew or should have known of Hughes' harassment and the hostile work environment and failed to take prompt remedial action reasonably calculated to end the harassment. In fact to the contrary, Marshalls ordered plaintiff to continue working with Hughes.

(30)     Defendant Marshalls further violated federal law by failing to take action reasonably calculated to prevent sex discrimination and harassment and by permitting a work environment to exist that was hostile and offensive to plaintiff.

(31)     As a direct and proximate result of defendant Marshalls' actions, plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

(32) At all times material hereto, defendant Marshalls engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of plaintiff so as to support an award of compensatory and punitive damages.

(33) The above-described acts of defendant Marshalls constitute sex harassment and discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et. seq.*

## COUNT II: CLAIM FOR ASSAULT AND BATTERY

(34) Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(35) During each occasion on which defendant David Hughes kissed, hugged, rubbed plaintiff's body parts, and/or touched plaintiff, plaintiff was placed in apprehension of imminent harmful or offensive contact with defendant David Hughes and was subjected to unwanted and offensive touching by David Hughes.

(36) Hughes used his power and authority as plaintiff's superior to carry out the assaults and batteries described herein.

(37) The acts of defendant Hughes constitute assault and battery under the common law of the Commonwealth of Virginia, for which Hughes is directly liable, and Marshalls is liable under the theories of vicarious liability, respondeat superior and otherwise under Virginia law.

(38) As a direct and proximate result of defendants' actions, plaintiff has suffered and will continue to suffer inconvenience, fear, humiliation, mental anguish, emotional pain and suffering, and physical pain.

(39) At all times material hereto, defendants acted in a willful and wanton manner or with reckless disregard for the protected rights of plaintiff so as to support an award of punitive damages.

WHEREFORE, plaintiff Summer Sowash demands judgment against defendants Marshalls and David Hughes, jointly and severally, for injunctive and equitable relief, compensatory and punitive damages, together with pre-judgment interest and for costs and attorney's fees to the extent recoverable by law, and for such other and further relief as may be just and equitable.

Trial by jury is demanded on all issues on which plaintiff is entitled to trial by jury, including any question concerning arbitrability.

                Respectfully Submitted,

                SUMMER SOWASH

               By: */s/ Terry N. Grimes*
                    Of Counsel

Terry N. Grimes, Esquire (VSB No. 24127)
TERRY N. GRIMES, ESQ., P.C.
Franklin Commons
320 Elm Avenue, SW
Roanoke, Virginia 24016-4001
(540) 982-3711
(540) 345-6572 *Facsimile*
*tgrimes@terryngrimes.com*
      Counsel for Plaintiff