UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SUMMER SOWASH, | ) | |
|     Plaintiff | ) | Case No: 7:19-cv-361 |
| | ) | |
| v. | ) | |
| | ) | |
| MARSHALLS OF MA, INC., <u>et al.</u>, | ) | By: Michael F. Urbanski |
|     Defendants. | ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on defendants Marshalls of MA, Inc., and David Hughes's (collectively, "Marshalls") motion for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure. ECF No. 48. For the reasons discussed below, the court will **GRANT** Marshalls's motion for summary judgment in its entirety.

### I. Overview

Plaintiff Summer Sowash began working at Marshalls in Roanoke, Virginia, in September 2010. Summer Sowash Dep., ECF No. 50-3, at 26. Defendant Marshalls has anti-discrimination and anti-harassment policies. <u>Id.</u> at 181. Marshalls encourages employees to report any discrimination or harassment concerns they have. Marshalls has a Human Resources Business Partner who, among other things, handles employees' harassment concerns. Joseph S. Taylor Dep., ECF No. 50-13, at 30. Marshalls also provides training regarding its discrimination and harassment policies. James M. Singleton Dep., ECF No. 49-2, at 11-12.

Generally, Marshalls employs a store manager, three assistant store managers, key carriers, coordinators, and associates at each store. <u>Id.</u> at 12-14, 20-21. At the Roanoke

location, Clayton Richmond was store manager. Id. at 30. David Hughes, Lynn Tyrrell, and Jasen Smith were assistant store managers. Erica Garrett Dep., ECF No. 50-11, at 28. Sowash was a key carrier and coordinator, and she reported to Tyrrell. Sowash Dep. at 27-29; David Hughes Dep., ECF No. 50-1, at 124-25.

David Hughes began working at the Roanoke Marshalls as an assistant manager in October 2017. Hughes Dep. at 8, 53. Hughes is a gay man in a long-term relationship with his husband. Id. at 6, 47; Kristy Thomason Dep., ECF No. 50-12, at 29-30.

On February 20, 2018, Sowash emailed Reggie Bennett, the region's Human Resources Business Partner, to discuss an "urgent matter" that occurred a few days prior. ECF No. 49-3 at 11. Sowash described her desire to become an assistant store manager in the Roanoke store,[1] and she complained of Hughes's inability to lead employees in a "positive manner" and not "with fear." Id. In her email, Sowash mentioned a February 16, 2018 incident with Hughes where he "used a threatening tone to try to show control." Id. at 12. Sowash described the encounter as follows:

> Last week, Friday the 16th around 9:45 am David called me into his office abruptly over [a phone call he received from Lynn Terrell regarding another employee's disclosure of Hughes's treatment toward her]. He demanded to tell him what I knew [about the employee reporting Hughes], but I had no clue what he was referencing. He said, "IF I FIND OUT THAT YOU ARE LYING TO ME YOU AND ME ARE ABOUT TO HAVE BIGGER PROBLEMS." Again, I've never felt scared to do my job or to work….but it was clear he was using a threatening tone to try to show control. It made me uncomfortable and I am now dread (sic) going to work.

---

[1] Throughout her time at Marshalls, Sowash made several complaints about wanting to be promoted to assistant store manager at the Roanoke store. Sowash Dep. at 64, 79-80.

2

ECF No. 49-3 at 12; Sowash Dep. at 104-07. While Sowash said she felt "uncomfortable" and "dread[ed] going to work," she did not state that she was fearful of any potential harm from Hughes. ECF No. 49-3 at 12. Hughes did not touch Sowash or make any sexual comments to her during this encounter. Sowash Dep. at 109.

In March 2018, about one month after the February 2018 office incident, Sowash said Hughes started "hovering over her" and began putting his arm around her and touching her arm. Id. at 103, 109-112. These touches were described as one-armed hugs where Hughes would run his finger up and down her arm. Id. at 111-13. This touching was unaccompanied by sexual comments. Id. at 113-15. Sowash stated that the touching lasted for months. Id. at 102, 110. Sowash never told Hughes that she did not want to be touched or hugged. Id. at 116, 119.

Concurrently, another employee, Kristy Thomason, went to Richmond with allegations that Hughes touched her arms and shoulders. Thomason Dep. at 25-26. Although she did not think the touching was sexual, she thought that Hughes touched her to be "friendly" and he wanted to "try[] to be your girlfriend." ECF No. 49-3 at 17. Thomason did not want to be touched because of her medical condition, which made the touching painful. Thomason Dep. at 25.

In April 2018, Sowash missed some work due to surgery. When she returned to work on April 24, 2018, Hughes "hugged me and kissed me on my cheek," and said he was glad to have me back. Sowash Dep. at 138-39. During this encounter, Hughes did not make any sexual comments or try to grope Sowash. Id. at 144. Moreover, Sowash did not tell Hughes to stop or that she did not want to be hugged. Id. at 138-39, 141-42. Sowash testified when Hughes

3

hugged her, she did not move because she was "scared" and "uncomfortable." Sowash Dep. at 144, 147. Another employee, Vivian Mendez, saw this interaction and spoke to Sowash about what happened.

Around the same time in April 2018, Marshalls received a report alleging that Richmond was involved in a relationship with an associate. In response, Marshalls sent Erica Garrett, a corporate rapid-response team member, to the Roanoke store to perform a "culture pulse."[2] Garrett Dep. at 47-48. Garrett's job was to "respond to early warning signs that could affect associate morale and an unhealthy work environment" in the Roanoke store. Sowash Dep. at 61; Garrett Dep. at 47. On May 1-2, 2018, Garrett met and interviewed various employees in the Roanoke store. Garrett Dep. at 17. On May 15, 2018, Garrett reported her notes and findings to Bennett. Id. at 19, 23. During the interview with Garrett, Sowash did not report any harassment from Hughes. Id. at 25, 29.

Based on the results of Garrett's Roanoke visit, several issues were brought to Joe Taylor, the Senior Associate Relations Specialist, for investigation. Taylor Dep. at 9-10. Taylor then went to the Roanoke store to conduct employee interviews. Id. at 11-13; Sowash Dep. at 76-77. The purpose of Taylor's interviews was to, among other things, investigate Richmond's alleged employee relationships and concerns over Hughes's inappropriate touching and comments. Taylor Dep. at 19-20.

During Taylor's interview, Sowash reported Hughes's hug and kiss on the cheek. Taylor Dep. at 31. Sowash provided a written statement about the incident. Sowash Dep. at 91-93.

---

[2] A culture pulse is "a temperature gauge to see if there [are] any opportunities with associate morale, an unhealthy work environment, or potential union activity." Garrett Dep. at 12-13.

4

Taylor also received a written statement from Vivian Mendez, who witnessed the incident and stated that Hughes hugged Sowash, appeared to kiss her on the cheek, and said that he was glad she was back. Sowash Dep. at 98.

Following his investigation in June 2018, Taylor issued a summary report which said that the allegations against Richmond were inconclusive, but the allegations against Hughes were validated, including the touching, hugging, kissing Sowash's cheek, and inappropriate comments like referring to himself as a "Queen" or "fa\*\*ot." Taylor Dep. at 22-26. Hughes stated he did not recall, nor would he, kiss an associate. Hughes Dep. at 155-56. He also testified that he did not recall touching anyone but may have placed his hand on employees' shoulders in a friendly, appropriate manner. Id. at 155-57.

Consequently, Marshalls issued a written warning to Hughes on July 3, 2018. Taylor Dep. at 26; Hughes Dep. at 28-31. Richmond met with Hughes to (1) discuss what corrective procedures would be enacted; (2) review Marshalls' anti-discrimination and anti-harassment policies in the company's Code of Conduct; and (3) set up weekly meetings to continuously monitor Hughes's behavior. Hughes Dep. at 40-41, 44-46. Sowash testified that Hughes did not touch her again after Taylor's interviews concluded on June 15, 2018. Sowash Dep. at 154-57.

On July 9, 2018, Hughes told Sowash that she "looked pretty in her yellow" shirt and said not to take offense at the comment. Sowash Dep. at 172. She then reported this to Richmond and Taylor. ECF No. 49-3 at 14. Hughes said he did not remember making that exact statement, but he often gave compliments, and it would not be unusual if he commented on Sowash's outfit. Hughes Dep. at 134-35. Additionally, Sowash reported that Hughes

5

inappropriately winked at two male employees. ECF No. 49-3 at 20. In September 2019, Hughes transferred to another Marshalls location.

On May 10, 2019, Sowash brought a two-count claim against Marshalls, alleging Title VII sex discrimination (Count I) and tortious assault and battery (Count II). Marshalls filed for summary judgment, asserting that Sowash lacks evidence to show that Hughes's conduct was severe or pervasive because it was infrequent and contained no sexual overtures. ECF Nos. 48, 49. Sowash opposes. ECF No. 50. The court heard argument on April 22, 2021, and the matters are ripe for resolution.

## II. Standard of Review

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party

must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990)). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992).

### III. Applicable Law

Title VII prohibits employers from discharging or otherwise discriminating against any individual "because of such individual's . . . sex[.]" 42 U.S.C.A. § 2000e-2(a). Sexual harassment that creates a hostile environment in the workplace may constitute sex discrimination. Meritor Savings Bank v. Vinson, 477 U.S. 57, 66 (1986). "Because an employee's work environment is a term or condition of employment, harassment based on sex is actionable under Title VII." Hernandez v. Fairfax Cnty., 719 F. App'x 184, 186 (4th Cir. 2018) (citing E.E.O.C. v. R&R Ventures, 244 F.3d 334, 338 (4th Cir. 2001)). However, "[n]ot all sexual harassment that is directed at an individual because of [their] sex is actionable." Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 207 (4th Cir. 2014) (quoting Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996)). Thus, in order to prove a hostile work environment claim based on sex discrimination, the plaintiff must show (1) the conduct in question was unwelcomed; (2) the harassment was based on gender; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive or hostile environment; and (4) the basis for imputing liability to the employer exists. E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir. 2008); Parker v. Reema Consulting Servs., 915 F.3d 297, 302 (4th Cir. 2019) (citing Bass v. E.I. du Pont de Nemours & Co., 32 F.3d 761, 765 (4th Cir. 2003)). At issue here are the second and third elements.[3]

Harassment because of sex need not be motivated by sexual desire. English v. Pohanka of Chantilly, Inc., 190 F. Supp. 2d 833, 841 (E.D. Va. 2002) (citing Oncale v. Sundowner

---

[3] The court assumes Hughes's conduct was unwelcomed as evidenced by Sowash reporting Hughes's touching, hugging, and kiss on the cheek.

Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998)). Nor does sex need to be the only factor for discrimination as long as it is a but-for cause. Bostock v. Clayton Cnty., 140 S. Ct. 1731, 1739 (2020). Therefore, to prove discrimination "because of" sex, a plaintiff may "(1) show that the alleged harasser's behavior constituted an earnest sexual solicitation; (2) demonstrate that the harasser displayed a general hostility to [women] in the workplace; or (3) offer direct comparative evidence about the harasser's treatment of men and women in some circumstances." Pohanka, 190 F. Supp. 2d at 843.

The requirement that the alleged sexual harassment be severe or pervasive "has both a subjective and objective component."[4] Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993). The court must consider the totality of the circumstances, including (1) frequency; (2) severity; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. Dumbaugh v. Univ. of Richmond, No. 3:19cv-57, 2019 WL 4307872, at *3 (E.D. Va. Sept. 11, 2019); see also Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015). This determination is not mathematically precise, Harris, 510 U.S. at 22, and "whether the harassment was sufficiently severe or pervasive to create a hostile work environment is 'quintessentially a question of fact' for the jury[,]" Conner v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179, 199-200 (4th Cir. 2000). Harassment is severe or pervasive

---

[4] Again, because Sowash reported Hughes's conduct, the subjective component is met. As such, the court need not consider Marshalls's argument regarding Sowash's actions, or lack thereof, in response to Hughes's conduct. See Morris v. City of Colorado Springs, 666 F.3d 654, 665 (10th Cir. 2012) ("In order to prevail on the subjective component of this test, the law does not require a plaintiff to show that the discriminatorily abusive work environment seriously affected her psychological well-being or that it tangibly impaired her work performance." (quoting Davis v. U.S. Postal Serv., 142 F.3d 1334, 1341 (10th Cir. 1998))).

when it is "permeated with discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21. Moreover, conclusory allegations with no specific evidentiary support will fail. E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 676 (4th Cir. 2011) (affirming summary judgment on a harassment claim where plaintiff alleged that his supervisor used the N-word "a bunch of times" but could not provide evidence to show any specific instances).

### IV. Severe or Pervasive

As to Count I, Sowash cannot meet the "high standard" of proving Hughes's behavior was severe or pervasive. See Singleton v. Dep't of Corr. Educ., 115 F. App'x 119, 122 (4th Cir. 2004). While Hughes's hugs, touching of Sowash's arm, kiss on the cheek, and occasional compliments about her appearance are inappropriate work behaviors, they do not cross the threshold of severe or pervasive conduct under Title VII.

Marshalls contends that Hughes's conduct was infrequent, only taking place between March 16, 2018, and June 15, 2018. ECF No. 49 at 18. Next, Marshalls argues that because Hughes never propositioned, made sexual comments, or threatened Sowash, there is no evidence to show that his conduct is severe or pervasive.[5] ECF No. 49 at 17-20; ECF No. 51 at 9-14.

---

[5] Sowash stated that she made notes detailing each instance of harassment. However, she did not produce those notes in discovery. As a result, Marshalls filed a motion to compel. ECF No. 25. The court granted the motion to compel, finding that a "[r]eview of Plaintiff's deposition testimony and documents by Plaintiff's counsel under seal show[s] that Plaintiff's handwritten notes were made contemporaneously with the alleged incidents of sexual harassment." Order, ECF No. 35, at 2. Despite this, Sowash did not produce the notes in discovery, and Marshalls filed a second motion to compel. ECF No. 36. In response, Sowash submitted a declaration stating that the notes the court reviewed were made at her counsel's direction. ECF No. 37-1. As such, the court denied the second motion to compel. Order, ECF No. 39. In any event, the notes are not in the record and will not be considered for summary judgment.

Sowash relies on the "continuous" touching of her arm, welcome back hug and kiss, and compliments about her appearance to show severity and pervasiveness. Moreover, Sowash alleges that the incidents should be looked at in totality rather than as isolated incidents. See Williams v. Gen. Motors Corp., 187 F.3d 553, 562-63 (6th Cir. 1999) (stating that sexual remarks, crude language, and hostile treatment by employees gave rise to a jury question); Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir. 1987) ("One of the critical inquiries in a hostile environment claim must be the environment. Evidence of a general work atmosphere therefore – as well as evidence of specific hostility directed toward the plaintiff – is an important factor in evaluating the claim."). Sowash cites McKinley v. Salvation Army, 192 F. Supp. 3d 678 (W.D. Va. 2016), to argue that severity and pervasiveness are essentially questions of fact.

Considered in the light most favorable to Sowash, the facts of this case do not rise to the level of severe or pervasive harassment. To be sure, Sowash testified that Hughes touched her arm or hugged her more than ten times from March to June 2018. There was only a single instance of a kiss, which occurred the day Sowash returned to work from medical leave. And, other than vague assertions that Hughes said Sowash was pretty, she could only recall one instance where Hughes said she looked pretty in yellow. Sowash Dep. at 172-74. Even considered in its totality, Sowash's evidence falls short of proving severity or pervasiveness.[6]

---

[6] Nor does the February 2018 office encounter support Sowash's claim. The February 2018 incident involved a conflict between Sowash, Hughes, and another employee. Sowash feeling "scared" as a result of Hughes's comments concerning this work matter should not be conflated with her evidentiary burden to prove Hughes engaged in conduct meant to "humiliate, ridicule, or intimidate." See Dortch v. Cellco P'ship, 770 F. App'x 643, 645 (4th Cir. 2019) ("[S]everal observers noted that this employee made his remarks after Dortch acted unprofessionally towards him, demonstrating that this was an ordinary workplace dispute."). As such, the February 2018 work dispute does not support Sowash's claim of sexual harassment.

11

The facts of this case differ markedly from those relied upon by Sowash. For example, in Williams v. General Motors, the plaintiff complained of sexual harassment, alleging that (1) her supervisor made vulgar sexual innuendos on three different occasions and once put his arm around her neck and put his face against hers; (2) her coworkers called her a "slut"; and (3) her coworkers glued office supplies to her desk, once hit her with a thrown box, and locked her in her work area. Williams, 187 F.3d at 563. The district court held that the plaintiff's harassment was not severe or pervasive when looked at through four separate categories of complaints: "(1) foul language in the workplace; (2) mean or annoying treatment by coworkers [such as "pranks"]; (3) perceived inequities of treatment; and (4) sexually related remarks directed toward [the plaintiff]." Id. at 562. The court dismissed plaintiff's claims because the instances of harassment in each category did not constitute severity or pervasiveness. Id. The Sixth Circuit reversed, finding that the facts, when viewed in their totality, presented a genuine issue of material fact as to whether the alleged harassment was severe or pervasive. Id. at 563. This case differs from Williams because Hughes made no sexual innuendos to Sowash, did not call her any derogatory names, did not touch her in a sexual manner, and did not engage in office "pranks" or any disparate treatment of Sowash. As such, when viewing the evidence in its entirety, Hughes's non-sexual hugs and touching, compliments on Sowash's appearance, and one kiss on the cheek are insufficient to prove severity or pervasiveness.

Sowash's reliance on McKinley is likewise strained. In McKinley, the court denied summary judgment where (1) overt sexual comments were continuously made from the time plaintiff interviewed until she resigned; (2) plaintiff's supervisor repeatedly called her a Jezebel, and other employees began calling her the same; (3) the supervisor propositioned plaintiff;

12

and (4) the supervisor told plaintiff that she was going to be fired because she was a Jezebel. McKinley, 192 F. Supp. 3d at 681-87. Here in contrast, none of those factors are present. Hughes (1) never made overt sexual comments to Sowash; (2) referred to himself as "Queen bitch" and "fa\*\*ot" but did not call Sowash any demeaning names; (3) never propositioned Sowash; and (4) did not threaten Sowash, except for the ordinary work dispute in February 2018.

This case is closer to Rivers v. Time Warner Cable, Inc., No. 3:11-cv-146-RJC-DSC, 2012 WL 2342930 (W.D.N.C. June 20, 2012), and Byers v. HSBC Finance Corp., 416 F. Supp. 2d 424 (E.D. Va. 2006). In Rivers, the plaintiff alleged that between June 30, 2008, and April 2009, her supervisor, among other things, grabbed her arm to move her; touched her shoulder, arm, or back about ten times in a non-sexual way; complimented her hair and on one occasion attempted to touch it while making a joke about sexual harassment; and once "pulled [p]laintiff's shirt away from her back while she was on a call to look down her shirt at her tattoo . . . ." Rivers, 2012 WL 2342930, at \*4. The district court held that "the occasional non-sexual touching [p]laintiff complains of is not remotely close to establishing the severe and pervasive harassment required for a hostile work environment claim." Id. at \*5. Moreover, the court noted that the most serious allegation, pulling plaintiff's shirt away to look down it, was an isolated incident. Id. As such, the court held that this single occurrence was not serious enough to warrant severe or pervasive harassment. Id. ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). Similarly, Hughes's most egregious behavior, a welcome-back kiss on the cheek, was an isolated incident.

13

Like the non-sexual touching of Rivers's arm, Hughes's non-sexual touching of Sowash's arm does not rise to severe or pervasive harassment.

Similarly in Byers, a plaintiff alleged sexual harassment against his supervisor when she, among other things, (1) asked him if he had a girlfriend, and if so, was he faithful to her; (2) invited him to her family's home in Aruba; (3) leaned over his desk while looking at work documents, "at which time her breasts touched [plaintiff's] head[]"; (4) hugged him after he reached a sales goal related to work; and (5) massaged his neck once. Byers, 416 F. Supp. 2d at 433. The district court held that the conduct was not severe or pervasive because the conduct did not occur daily and the supervisor never propositioned plaintiff, asked him on a date, or insinuated that they should have sex. Id. at 435. Regarding the supervisor's physical contacts with plaintiff, the court noted that "none was overtly sexual" nor was it "of a forceful, physically threatening, or humiliating nature." Id. at 435-36.

The same is true here. While Hughes touched Sowash's arm a number of times, he did not proposition her or make any sexual comments to her. Like Byers, the one kiss on the cheek was inappropriate, but it does not create severe or pervasive sexual harassment. See also Singleton, 115 F. App'x at 122 (holding that a supervisor's conduct was not severe or pervasive where he never "requested a sexual act, touched [plaintiff] inappropriately, discussed sexual subjects, showed her obscene materials, told vulgar jokes, or threatened her"); Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 773 (4th Cir. 1997) (holding that employer's conduct was not severe or pervasive where employer never propositioned, taunted, flirted with, or inappropriately touched plaintiff); Harris v. Clyburn, No. 94-1009, 1995 WL 56634, at *3 (4th Cir. Feb. 3, 1995) (holding the same); Freeman v. Sci. Applications Int'l, No. 1:19-cv-

14

1502(LMB/MSN), 2020 WL 6928610, at *6 (E.D. Va. Nov. 24, 2020) (finding that supervisor's conduct was not severe or pervasive where she complimented plaintiff's appearance, touched his shoulder and bicep, put her hand on the small of his back, and once rubbed plaintiff's ear).

To be sure, several employees complained about Hughes's management style, tactics, and lack of connection with employees. See Erica Garrett Emails, ECF No. 50-5. However, general workplace grievances cannot underpin a sex discrimination claim. See Bouknight v. S.C. Dep't of Corr., 487 F. Supp. 3d 449, 469 (D.S.C. 2020) ("[C]ase law has long held that rudeness, bullying, and harsh management styles generally do not meet the requisite standard to establish a hostile work environment."); see also Faragher, 524 U.S. at 788 (finding that Title VII does not create a "general civility code" in the work force) (citing Oncale, 523 U.S. at 81); Dortch v. Cellco P'ship, 770 F. App'x 643, 645 (4th Cir. 2019) (stating that Title VII is meant to "filter out complaints attacking the ordinary tribulations of the workplace" and does not encompass general workplace disputes).

Accordingly, the court concludes that Sowash's evidence of Hughes's non-sexual touching, welcome-back kiss on the cheek, and compliments do not constitute severe or pervasive workplace conduct sufficient to support a Title VII hostile work environment claim. As such, Marshalls is granted summary judgment on Count I.[7]

---

[7] Because the court finds that Hughes's conduct is not severe or pervasive, it need not consider whether the alleged harassment was "because of" sex.

15

## V. Assault and Battery

As to Count II, Sowash alleges that Hughes's conduct amounts to assault and battery. ECF No. 50 at 22-23. Assault is "an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." Koffman v. Garnett, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003). Physical contact is not necessary for an assault to be actionable. Bowie v. Murphy, 271 Va. 127, 136, 624 S.E.2d 74, 80 (2006) (holding that assault is "actionable without actual damage"). Battery is "an unwanted touching which is neither consented to, excused, nor justified." Koffman, 265 Va. at 16, 574 S.E.2d at 261. "The law is so jealous of the sanctity of the person that the slightest touching of another, or of his clothes, or cane, or anything else attached to his person, if done in a rude, insolent, or angry manner, constitutes a battery for which the law affords redress." Crosswhite v. Barnes, 139 Va. 471, 477, 124 S.E. 242, 244 (1924).

Sowash argues that each attempted touch by Hughes is sufficient to prove assault, and each touch and the one kiss is sufficient to prove battery, citing Huitt v. Market St. Hotel Corp., No. CIV. A. 91-1488-MLB, 1993 WL 245744 (D. Kan. June 10, 1993), Barrett v. Omaha Nat'l Bank, 584 F. Supp. 22 (D. Neb. 1983), and Radtke v. Everett, 501 N.W.2d 155 (Mich. 1993). But each of those cases involves facts vastly different from those present here. In Huitt, a supervisor raped an employee while he was driving her home. Huitt, 1993 WL 245744, at *2. In Barrett, while on a work conference trip, a coworker touched plaintiff's groin, put his hand on her thigh, positioned himself in her bed, and made sexual comments. Barrett, 584 F. Supp. at 24. In Radtke, plaintiff was held down and choked by her supervisor as she

16

tried to get away. Radtke, 501 N.W.2d at 159. Eventually, plaintiff broke free and continuously stated, "You don't want to do this. I don't want to do this. . . ." Id. Even still, the supervisor attempted to grab and kiss plaintiff. Id.

Here, Sowash alleges that Hughes's one-arm hugs lasted for "a minute or so[,]" and the welcome back hug and kiss lasted for "a couple of seconds." Sowash Dep. at 91-92, 112-13. Hughes never propositioned her. Nor did he kiss or attempt to kiss Sowash on any occasion other than the welcome-back greeting on April 24, 2018. Sowash never informed Hughes that she did not want to be touched or hugged nor did she resist.

As to assault, there is no evidence proving Hughes intended to harm or offend Sowash by touching, hugging, or kissing her. Specifically, Hughes knew that Sowash hugged another supervisor, and Sowash never informed Hughes that she did not want to be touched nor did she have any external reaction to being hugged. Therefore, it is reasonable for Hughes to assume that welcoming Sowash back to work after she returned from surgery with a momentary hug and kiss on the cheek was simply a friendly gesture.

As to battery, Marshalls cites Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401 (4th Cir. 2013), as being instructive. The court agrees and finds that the Fourth Circuit opinion in Balas forecloses Sowash's claim. In Balas, plaintiff Karen Balas's supervisor, Brad Price, hugged her in January 2010. Id. at 405. The hug occurred immediately after Balas gifted Price with Christmas cookies for his family. Price thanked Balas and said, "You never cease to amaze me." Id. Balas testified that Price then "swooped [her] up at [her] waist and grabbed [her] . . . ." Id. at 411. Balas sued, alleging, among other things, battery, arguing that Price's hug was offensive and whether she consented to the hug was a question of fact for the jury. Id. It is

17

undisputed that Balas did not tell Price to stop. Id. The district court granted summary judgment, concluding that Price's hug could not constitute battery. Id. at 406. The Fourth Circuit affirmed, reasoning that for contact to rise to the level of battery, it must be offensive and "done in a rude, insolent, or angry manner[.]" Id. at 411 (citing Crosswhite, 139 Va. at 477, 124 S.E. at 244). The offensiveness of the contact is proven by an objective standard, not the plaintiff's subjective feelings. Id. Moreover, only touching that is "unwarranted by the social usages prevalent at the time and place at which it is inflicted[,]" gives rise to battery. Id. (citing Restatement (Second) of Torts § 19 cmt. a). As such, Price complimenting and hugging Balas immediately after receiving a Christmas gift from her was not unwarranted by social usages at that time. Given the affable circumstances surrounding Price's hug, the Fourth Circuit found no battery occurred and affirmed summary judgment. Id. at 412.

The same holds true here as there was nothing rude, insolent, or angry about Hughes's conduct. Hughes hugged Sowash, gave her a kiss on the cheek, and said he was glad she was back from medical leave. Sowash made no objection. Like Balas, a hug and kiss in this instance does not defy the social usages prevalent at that time. Being greeted with a welcome-back hug and kiss on the cheek after returning to work from surgery does not constitute objectively offensive conduct that gives rise to battery.

In short, the conduct in this case – non-sexual touching on the arm, one arm hugs, and a welcome-back kiss – lacks the intent required for assault nor does it run afoul of social usages sufficient to amount to battery. To be sure, Hughes touched Sowash when he hugged her with one arm and gave her a welcome-back hug and kiss. However, Sowash did not object, and the conduct is insufficiently rude, insolent, or angry to constitute common law battery under

18

Crosswhite. In that regard the facts here differ markedly from the circumstances in Kelley v. Commonwealth, 69 Va. App. 617, 822 S.E.2d 375 (2019). There, the Virginia Court of Appeals affirmed a conviction of battery where an employee grabbed a coworker's face and attempted to kiss her, all the while the victim "signaled her lack of consent by trying to pull away and saying 'No, No, No.' Nonetheless, he advanced and grabbed her face in an effort to kiss her." Kelley, 69 Va. App. at 629, 822 S.E.2d at 381. The court concluded that "[u]nder these facts, it was entirely reasonable for the court to conclude that the appellant intended to act in a rude manner and did so when he grabbed the victim's face and attempted to force a kiss on her." Id. Here, the facts do not support such an inference of rude or offensive conduct by Hughes.

As a result, there is no evidence to support a finding that Hughes's touching, hugging, and welcome-back kiss on the cheek amount to assault or battery. Accordingly, Marshalls is granted summary judgment on Count II.

## VI. Conclusion

For the reasons stated, the court finds that there is no genuine dispute of material fact as to any of the claims Sowash brought against Marshalls. As such, the court **GRANTS** Marshalls's motion for summary judgment in its entirety.

An appropriate order will be entered.

Entered: March 24, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.05.24 19:13:46
-04'00'

Michael F. Urbanski
Chief United States District Judge